IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FAIRFAX COUNTY SCHOOL BOARD,  )
                             )
          Plaintiff,         )
                             )
v.                           )    Civil Action No. 1:25-cv-00951 (AJT/LRV)
                             )
VIRGINIA EMPLOYMENT          )
COMMISSION, *et al.*,        )
                             )
          Defendants.        )

**MEMORANDUM OPINION AND ORDER**

Plaintiff Fairfax County School Board ("School Board" or "Plaintiff") alleges that Defendants Virginia Employment Commission ("VEC") and its Commissioner, Demetrios J. Melis[1] ("Commissioner"), failed to follow certain procedures in making and issuing the required notices for claim determinations and appeals of unemployment insurance ("UI") benefits issued to the School Board's former employees in violation of Virginia law and the Due Process Clauses of the Virginia State Constitution and the Fourteenth Amendment of the United States Constitution. As a result of these alleged violations, the School Board alleges that VEC paid UI benefits to ineligible individuals, for which VEC then requested reimbursement from the School Board; and then in December 2024, based on those requested reimbursements, the VEC, Commissioner, and Defendant the Virginia Department of Taxation ("Tax Department") seized $5,047,616.91 from the School Board's student activity fund. In response to the Complaint, Defendants filed a Motion to Dismiss, [Doc. No. 3] (the "Motion"), which the Court denied as to Counts II, III, and IV following a hearing on August 6, 2025, *see* [Doc. No. 17], and took under advisement as to Count

_____
[1] The Commissioner is sued in his official capacity only. [Doc. No. 1-1] ¶ 8.

1

I. Upon consideration of the Motion, the memoranda and exhibits submitted in support thereof and in opposition thereto, the argument of counsel at the hearing and for the reasons stated below, the Motion is **GRANTED** as to Count I.

## I. BACKGROUND

Plaintiff Fairfax County School Board alleges the following in its Complaint:

Under the Virginia Unemployment Compensation Act, the VEC "shall take all necessary steps to maintain a solvent trust fund financed through equitable employer taxes that provides temporary partial income replacement to involuntarily unemployed covered workers." [Doc. No. 1-1] ¶ 11; Va. Code § 60.2-11 l(B). The VEC manages a trust fund for paying UI benefits, titled the "Unemployment Compensation Fund." [Doc. No. 1-1] ¶¶ 12-14. The School Board is a "reimbursable employer," meaning that the School Board repays VEC for each dollar of benefits paid to a former School Board employee if the claimant receives UI benefits from the VEC. *Id.* ¶ 15. In these circumstances, the Act mandates that even while the claim or any appeal thereof is being adjudicated by the VEC, the School Board must still repay the VEC pending the final adjudication of the appeal. Va. Code Ann. § 60.2-507(C).

In response to the COVID-19 pandemic, VEC was flooded with UI claims, which led to VEC accruing a backlog of unpaid claims in addition to lacking sufficient funds to satisfy all claims. [Doc. No. 1-1] ¶ 18. On March 17, 2020, Virginia's then-Governor Ralph S. Northam announced that the VEC would temporarily waive a one-week waiting period for receiving UI benefits and expanded benefits eligibility. *Id.* ¶¶ 18-20. Various federal relief bills were passed to assist states in funding UI benefits,[2] but Plaintiff alleges that none of these federal relief packages

---

[2] These programs include the Pandemic Emergency Unemployment Compensation ("PEUC"); Pandemic Unemployment Assistance ("PUA"), Federal Pandemic Unemployment Compensation ("FPUC"), Lost Wages

authorized VEC to issue benefits to individuals who were ineligible to receive UI benefits, ignore VEC's own claims adjudication process, or fail to provide VEC's appellate review for claim decisions. *See id.* ¶ 38.

Between March 2020 and July 2021, VEC processed approximately 2.5 million unemployment insurance claims, which required 193,000 overtime hours, a 1,600% increase from past years.[3] *Id.* ¶ 54. Even with these overtime efforts, VEC had accrued a backlog of claims intake, adjudications, fraud investigations, and appeals. *Id.* To expedite the UI benefits process, VEC reduced the fact-finding interviews by 50%, down to only fifteen minutes, and started automatically paying UI benefits before eligibility determination were adjudicated.[4] *Id.* ¶¶ 52-53. Additionally, from March 24, 2020 through April 9, 2021, VEC programmed its UI benefits system to automatically pay UI benefits for certain claims without any VEC eligibility review. *Id.* ¶ 71. VEC understood that "payments were likely made to ineligible claimants" but maintained that "[i]f adjudications identify ineligible claimants, VEC will have to notice these claimants and attempt to collect overpayments."[5] *Id.* ¶ 72. Where UI benefits are improperly paid, it is VEC's responsibility to collect the improperly paid benefits, although there are certain circumstances where VEC can forego these efforts after a period of time. *Id.* ¶ 92; Va. Code 60.2-612-.1(C).

---

Assistance ("LWA"), Mixed Earners Unemployment Compensation ("MEUC"), Extended Benefits ("EB"), Emergency Unemployment Insurance Stabilization and Access Act of 2020 ("EUISAA"), and the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"). *Id.* ¶¶ 22-36, 45.

[3] Even though there was a nationwide increase in UI benefits claims as a result of the pandemic, VEC's backlog led to delays that was nearly double the United States' average. *Id.* ¶ 73.

[4] In April 2021, a group of plaintiffs filed a class action lawsuit alleging that the Commissioner and VEC violated the plaintiffs' due process rights by not promptly examining their claims for UI benefits. *Id.* ¶ 62. The parties to that lawsuit entered a settlement agreement on May 25, 2021, which required VEC to expedite the claim adjudication process to meet certain quotas and pay out claims. *Id.* ¶¶ 63-64. Here, the School Board alleges that this settlement agreement, combined with the COVID-19 pandemic exigencies, led VEC to pay claims without hearing the School Board's appeals with respect to eligibility determinations. *Id.* ¶¶ 67-68.

[5] As alleged in the Complaint, VEC, on average, only detects 37% of overpayments based on a three-year period. *Id.* ¶ 86.

In the second quarter of 2020, VEC notified the School Board that it owed VEC $2,188.425.06[6] as reimbursements for paid UI benefits. [Doc. No. 1-1] ¶ 57. After receiving this notice, a Fairfax County Public School ("FCPS") employee contacted VEC's Chief of Tax regarding the bill, at which time, FCPS was informed that it could not yet contest the bill because the benefits eligibility determinations for the claims were not yet made on the claims for which VEC was seeking reimbursement. *Id.* ¶ 58. Shortly thereafter, the School Board sent a letter to the Chief of Tax on October 31, 2020, indicating its intention to appeal 2,419 UI benefits claims. *See id.* ¶ 59. For the claims that the School Board indicated it would appeal, it argued that the claimants were ineligible for UI benefits for various reasons, including (i) the claimants received normal pay from the School Board; (ii) the claimants had reasonable assurances that their positions would be available at the end of the summer break; (iii) the claimants received income replacement from the School Board; (iv) the claimants' retirement benefits made them ineligible for UI; and/or (v) the School Board was not the statutorily responsible employer. *Id.* ¶ 60. The School Board contends that over the next four years it continued to receive UI benefit reimbursement requests from VEC on a quarterly basis, and the School Board continued to contest UI benefit claims. *Id.* ¶ 61; *id.* at 48-265 (list of disputed claims).

At issue in this case are claim determinations from the second quarter of 2020 through 2022, which the School Board has appealed, but the VEC has not yet adjudicated. Nevertheless, the VEC sought reimbursement from the School Board for $5,047,616.91,[7] which includes the principal and accumulated interest on the paid claims. *Id.* ¶¶ 77, 79.

---

[6] CARES Act funding paid the other half of this quarterly bill. *Id.* ¶ 57.
[7] Plaintiff alleges that historically it paid less than $200,000 in UI benefits before these years. *Id.* ¶ 96.

4

Starting in April 2024, the Parties started discussing the School Board's owed payment. *Id.* ¶¶ 88-89. Plaintiff contends that when it approached the Defendants about the status of the pending appeals, Defendants "offered no substantive response other than to note the exigencies of the pandemic excused ordinary unemployment insurance benefit processing and that the School Board was therefore obligated to pay millions of dollars of benefits VEC had improperly paid to Improperly Paid Persons." *Id.* ¶ 93. Plaintiff's view is that VEC is essentially requesting reimbursement for improperly paid UI benefits without making, or giving any indication that it intends to make, any determination on the pending appeals. *Id.* ¶ 111.

As the Parties continued discussing the owed payment, on June 17, 2024, the School Board paid VEC $160,000 for UI benefits for all of 2023 and the first quarter of 2024, and previously paid $90,000 to settle all UI benefits for all of 2020.[8] *Id.* ¶¶ 98-99. Plaintiff contends that these payments were supposed to satisfy the entire UI benefits reimbursement for those periods but due to various accounting issues, Plaintiff is unable to determine how much remains due and owing for the other periods. *Id.* ¶ 100.

On December 5, 2024, VEC gave notice to the Bank of America (FCPS' bank) that the School Board was delinquent in taxes in the amount of $5,147,206.81 ($2,973,973.29 for principal, and $2,173,233.52 in interest), with interest accruing each month. *Id.* at 267-69; *id.* ¶ 116. The School Board received notice of the lien on December 16, 2025, and on December 17, 2024, VEC had recorded a Lien on FCPS's student activity accounts, which consists of funds the School Board does not actually own but holds in a fiduciary capacity for student clubs and organizations. *Id.* ¶¶ 118, 122. According to the School Board, the Memorandum of Lien (i) includes claims from 2022,

---

[8] Plaintiff alleges that this payment was incorrectly assigned to the interest balance rather than the principal balance. *Id.* ¶ 99.

2023, and the first quarter of 2024, despite Plaintiff settling part of the 2024 UI benefit claims; (ii) shows that over 71% of the claims comprising of the lien still have no claim determination made on eligibility; and (iii) shows that multiple claimants were deemed ineligible for UI benefits since making a claim, but they are still recorded on the Memorandum of Lien. *Id.* ¶ 126. On December 23, 2024, Bank of America seized $5,147,206.81 from the student activity accounts and paid the funds to VEC. *Id.* ¶ 129.

In Count I of the Complaint, Plaintiff alleges that the Commissioner and the VEC failed to follow the procedures prescribed for claim determinations and appeals in Virginia Code § 60.2-619, -620, and -521, *id.* ¶¶ 134-40, and in its prayer for relief, Plaintiff seeks, *inter alia*, a declaration that the VEC and Commissioner acted *ultra vires* and unlawfully in assessing, collecting, and recording the Memorandum of Lien for 5,147,206.81, and asks for a preliminary injunction to require the return of the seized money. *Id.* at 44. The Defendants have moved to dismiss Count I on the grounds that Defendants enjoy sovereign immunity with respect to any claims based on those Code provisions and in any event, there is no private right of action under the relied upon Code provisions.

## II. STANDARD OF REVIEW

Where a defendant is entitled to sovereign immunity, a court lacks subject matter jurisdiction to hear the case or claims. *Cunningham v. Gen. Dynamics Info. Tech, Inc.*, 888 F.3d 640, 649 (4th Cir. 2018); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 53, 76 (1996). "As a general rule, the Commonwealth [of Virginia] is immune both from actions at law for damages and from suits in equity to restrain governmental action or to compel such action." *All. to Save the Mattaponi v. Commonwealth Dep't of Envtl. Quality*, 270 Va. 423, 455 (2005). This immunity equally extends to state agencies, *see Passaro v. Virginia*, 935 F.3d 243, 245 (4th Cir. 2019), and

6

can only be abrogated by Virginia's General Assembly but such "[a] waiver of sovereign immunity will not be implied from general statutory language but must be explicitly and expressly stated in the statute." *Mattaponi*, 270 Va. at 455. Because a court does not have authority to resolve any issues without jurisdiction, it must resolve any challenge to its subject matter jurisdiction before addressing any other claim. *Whitaker v. Monroe Staffing Servs., LLC*, 42 F.4th 200, 206 (4th Cir. 2022).

## III. DISCUSSION

In Count I, Plaintiff alleges that the VEC and Commissioner failed to follow Virginia Code §§ 60.2-619, -620, and -521. *See* [Doc. No. 1-1] ¶¶ 134-41.

Virginia Code § 60.2-619 provides, *inter alia*, that if a claimant files an initial claim for benefits, the VEC "shall" send notice to "any reimbursable employing units that may be liable for reimbursement to the Commission for any benefits paid." Va. Code § 60.2-619(B). After a claim determination is made, the VEC "shall promptly examine the claim. . . . [d]etermine whether or not such claim is valid. . . . [and after which issue a] [n]otice of determination upon a claim, the reasoning behind the decision, and a statement of case-specific facts material to the determination" to the claimant and the claimant's former employer. Va. Code § 60.2-619(C). The claim determinations are final unless, the claimant or employer files an appeal within thirty calendar days after the notification was mailed. *Id.* § 60.2-619(D). Where an employer files an appeal under Section § 60.2-620, the Office of First Level Appeals within VEC's Administrative Law Division considers the claim and "shall affirm, set aside, reverse, modify, or alter the findings of fact and decision of the deputy, and may enter such order or decision with respect to the claim as such office finds should have been entered." *Id.* § 60.2-620(A). Within thirty days of the issuance of the First Level Appeals' decision, the parties may initiate further appeal. *Id.* § 60.2-620(B). Plaintiff

alleges in Count I that the VEC and Commissioner violated Virginia Code § 60.2-619 and -620 in (i) failing to provide notice to the School Board both when a claim is filed and when a determination has been made on eligibility; and (ii) failing to make prompt determinations on UI benefit claims and hold timely appeals on those challenged determinations. *See* [Doc. No. 1-1] at ¶¶ 134-40.

Virginia Code § 60.2-521 provides that if an employer defaults in payment of their unemployment taxes or interests, the VEC can commence a civil action to recover the unpaid taxes or the VEC "shall have such other remedies as are available to the State Tax Commissioner and county and city treasurers for the collection of taxes generally." Va. Code § 60.2-521. Plaintiff alleges in Count I that Defendants violated Section 60.2-521 in seizing the student funds as owed "taxes", when, in fact, the seized funds were not owed taxes, but rather "payments [to VEC] in lieu of taxes that were not assessed or owed." [Doc. No. 1-1] ¶ 145.

In the Motion, Defendants contend that the claims asserted in Count I should be dismissed because the Defendants are entitled to sovereign immunity with respect to those claims. [Doc. No. 10] at 1, 3. Generally, the United States, a state, or a state agency may not be sued without consent. *See United States v. Mitchell*, 463 U.S. 206, 212 (1983); *Fla. Dep't of Health v. Fla. Nursing Home Assn.*, 450 U.S. 147 (1981) (per curiam). A suit is against the sovereign "if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." *Dugan v. Rank*, 372 U.S. 609, 620 (1963). Although a state agency may waive sovereign immunity, neither party argues that the General Assembly has done so for claims under Virginia Code § 60.2-619, -620, and -521.

Instead, Plaintiff contends that sovereign immunity does not apply because the VEC and Commissioner acted *ultra vires* in failing to complete the claim adjudications and appeals in a timely manner. [Doc. No. 8] at 12-13. The *ultra vires* exception to sovereign immunity is narrow and applies only "where the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions [because t]he officer is not doing the business which the sovereign has empowered him to do or he is doing it in a way that the sovereign has forbidden." *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689 (1949)). However, to allege the exception, a plaintiff must do more than allege that the official's actions were illegal or unauthorized, but rather, they must "allege facts sufficient to establish that the officer was acting 'without any authority whatever,'" *Fla. Dep't of State v. Treasures Salvors, Inc.*, 458 U.S. 670, 697 (1982), or without any "colorable basis for the exercise of authority." *Id.* at 716 (White, J.) (concurring in part).

In *Pennhurst*, the plaintiff sued various state agencies and state officials for alleged violations of both federal and state laws. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 95-96 (1984). The Supreme Court found that the state officials who were acting in their official capacity were entitled to sovereign immunity on the state law claims because "the general criterion for determining when a suit is in fact against the sovereign is the effect of the relief sought," and the Supreme Court rejected the contention that "injunctive relief could be ordered against State officials for failing to carry out their duties under State statutes." *Id.* at 103, 106-07, 111. At bottom, the Supreme Court determined that "a federal suit against state officials on the basis of state law contravenes the Eleventh Amendment when—as here—the relief sought and ordered has an impact directly on the State itself." *Id.* at 117.

9

Here, the School Board does not allege that the VEC and Commissioner acted "without any authority whatever," but instead, alleges, in substance, that the VEC and Commissioner did not properly exercise the authority they were given in seizing the disputed funds. These allegations trigger the doctrine of sovereign immunity in two respects. First, the School Board does not allege that the Defendants acted "without any authority whatever," and second, asks the Court to order the VEC and Commissioner to return the seized funds, which are undisputedly funds now held by the state for the payment of UI benefits, and that requested relief would therefore be leveled against the state itself, relief *Pennhurst* expressly forecloses. *See id.* at 107. Accordingly, Count I does not plausibly allege *ultra vires* actions by or relief against the VEC or Commissioner sufficient to overcome the protections afforded under the doctrine of sovereign immunity.[9]

## IV. CONCLUSION

For the reasons stated above, Count I is barred by sovereign immunity, in light of which, it is hereby

**ORDERED** that the Motion, [Doc. No. 3], be, and the same hereby is, **GRANTED** as to Count I for lack of subject matter jurisdiction; and that Count I be, and the same hereby is, **DISMISSED** without prejudice.

The Clerk is directed to send a copy of this Order to all counsel of record.

August 27, 2025
Alexandria, Virginia

_____
Anthony J. Trenga
Senior U.S. District Judge

---

[9] Because the Court finds that sovereign immunity bars Count I, and therefore has no subject matter jurisdiction over Count I, it does not decide whether Plaintiff can assert a private right of action under Virginia Code §§ 60.2-521, -619, -620.